**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**JAMES R. COSTA,**

    **Plaintiff,**

**vs.**	**CASE NO. 1:03CV179-MMP/AK**

**JO ANNE B. BARNHART,
Commissioner of Social Security**

    **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A. <u>**PROCEDURAL HISTORY**</u>

Plaintiff filed an application for DIB and SSI on October 5, 1999, alleging a disability onset date of April 1, 1995, because of degenerative disc disease and degenerative joint disease in his lumbar spine. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on January 17, 2001. A supplemental hearing was held on April 2, 2002. An unfavorable decision was entered on June 11, 2002. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

B. <u>**FINDINGS OF THE ALJ**</u>

The ALJ found that Plaintiff has degenerative disc disease, which is severe within the meaning of the Act, but does not meet or equal any of the listings. (R. 28). Although Plaintiff uses marijuana every day, his drug use will not be considered as a basis for disability. His depression, also, is severe, but does not meet the part "B" requirements of Listing 12.04 because Plaintiff does not allege or describe any restriction in his daily activities due to his mental condition. Plaintiff's depression has only a mild affect on his ability to interact with others. Most of Plaintiff's restrictions are attributed to his physical condition. Plaintiff has exhibited no memory problems resulting from his depression, and has no condition that would cause a deterioration or decompensation in a work-like setting. Further, the objective medical evidence does not support an impairment that would cause the constant, severe pain described by

**No. 1:03CV179-MMP/AK**

Plaintiff. Tests show only a minimal disc protrusion and a mild disc bulge. Plaintiff's course of treatment has been conservative, and there has been no testing to confirm why Plaintiff claim he can lift no more than 3 to 5 pounds or walk only 200 feet. The reports of Drs. De Paz and Hernandez, which found Plaintiff totally disabled to work, are inconsistent with their medical records and other reports in the record. Thus, the ALJ found Plaintiff capable of performing a reduced range of light work, and the vocational expert identified a significant number of jobs in the national economy that Plaintiff could still perform.

### C.     ISSUES PRESENTED

Plaintiff argues that he was sent a defective notice of hearing in that it did not properly inform him of his right to counsel, and that the lack of counsel resulted in prejudice to Plaintiff's case in that the ALJ did not obtain his mental health records.

The Commissioner responds that Plaintiff was properly advised of his right to counsel and waived that right. The Commissioner argues that the ALJ obtained mental health records and discussed them in his decision.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

### D.     STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and

the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

**No. 1:03CV179-MMP/AK**


A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments,

Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E. SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Plaintiff settled with his employer for workers compensation benefits resulting from the injury to his back in 1995. (R. 126). This injury was described as lower back injury from stacking cans of paint and occurred on November 21, 1990. (R. 128). Plaintiff was assessed a 3.5% to 4% permanent disability rating. (R. 128).

Records from treating physician, Dr. Harry F. Jones, an orthopedic surgeon, shows treatment beginning November 13, 1997, for lumbar pain. (R. 193). An MRI taken at Dr. Jones bequest and dated November 19, 1997, showed minimal midline disk protrusion at L5-S1, mild bulge at L4-L5, and mild degenerative disc change at L5-S1. (R. 304). His treatment plan was medication, which was "effective." (R.191).

Treating physician Dr. Caranasos shows treatment on April 18, 2000, and May 16, 2000. (R. 226-228). He treated Plaintiff for back pain with medications and suggested that he go to the Spine Care Center for further treatment options. (R. 226).

**No. 1:03CV179-MMP/AK**

Treating physician, Dr. Oliver De Paz, saw Plaintiff initially on March 17, 2001, and each month thereafter through June 2001. (R. 305-313). Plaintiff told Dr. De Paz that he had tried medications, physical therapy, chiropractic, and was currently on a TENS unit without positive results. (R. 309). Dr. De Paz reviewed the MRI from 1997 and an x-ray from February 12, 2001, and found only a slight decrease in disc space, but an otherwise normal exam. (R. 309). His range of motion examination revealed moderate restrictions, but " no evidence of intrinsic disc pathology." (R. 311). His diagnoses were chronic pain syndrome, diffuse myofascial pain, and vocational dysfunction. (R. 311). His treatment plan was to continue chiropractic care, use of the TENS unit, exercise, and light activity with no lifting greater than 25-30 pounds and no repetitive bending, stooping, squatting or twisting activities. (R. 312). He recommended no further diagnostic testing. (R. 311).

At a follow up visit a month later, Dr. De Paz suggested that Plaintiff look for a job. (R. 308). Dr. De Paz completed a physical functional assessment dated July 6, 2001, which found Plaintiff capable of sitting, standing, or walking two hours at a time for a total of eight hours; occasionally able to lift 25 pounds and up to ten pounds continuously; unable to consistently bend, crawl, squat, climb or reach, but otherwise unrestricted. (R. 314).

Two months before this last report Dr. De Paz completed a form for Florida Welfare to Work program on May 14, 2001, that Plaintiff was totally unable to participate

**No. 1:03CV179-MMP/AK**

in the program because of chronic pain syndrome, myofascial pain syndrome, depression and anxiety, which were permanent. (R. 303).

On August 23, 2001, Dr. De Paz completed a consultative examination at the Administration's request and found Plaintiff capable of light work activity. (R. 321-326).

A consultative examination by Dr. Lance Chodosh dated February 15, 2000, finds Plaintiff able to walk and stand normally with a completely normal range of motion examination. (R. 206-211). Dr. Chodosh responded to a medical assessment form sent to him by OHA that Plaintiff had no limitations and had a normal neuromuscular examination. (R. 298-301).

Notes from Meridian Behavioral Healthcare show that Plaintiff admitted himself voluntarily on January 10, 2000, for anger and suicidal ideation. (R. 195). No medication was prescribed, but an appointment for counseling was set up with Dave Hudson. (R. 196). Substance Abuse Addendum shows marijuana use for pain with extensive drug history. (R. 200-201). Plaintiff's episode was precipitated by frustration at not being able to support himself and being turned down for disability. (R. 203). Plaintiff went to counseling consistently, complaining often about his back pain and desire to work. (R. 229-276). A letter from Dave Hudson dated March 22, 2001, states: "Both his mental illness and medical condition make it doubtful he would be able to perform the necessary duties and functions of a job. It is anticipated that his treatment will continue as currently structured for at least the period of a year. Additionally it is anticipated he will require medication his entire life." (R. 302).

**No. 1:03CV179-MMP/AK**

Later records from Meridian indicate Dr. Yolanda Hernandez began meeting with Plaintiff.  (R. 327-344).  She, too, completed a form for Florida Welfare to Work Program dated July 30, 2001, stating that Plaintiff was completely unable to work at that time and his condition was permanent.  (R. 327).  He continued to be treated for depression and anxiety with medication.  (R. 327-344).  Plaintiff also continued meeting with Dave Hudson through at least April 2003, and these additional records were submitted to the Appeals Council.  (R. 358-511).  These records show continued difficulties with pain and worry over his disability determination.  (R. 469, 476, 479, 492, 501, 509).

A consultative mental examination by Dr. Mhatre dated March 29, 2000, finds Plaintiff having some difficulty getting in and out of the chair, but not to be in acute distress physically, although he was distressed about his life and not being able to work.  (R. 214).  The last page or pages of the report are not in the record.

A consultative examination by psychologist Candace Valenstein on August 16, 2001, found Plaintiff to have exaggerated his complaints and problems with some deliberate distortion.  (R. 317).  Plaintiff also displayed inappropriate behavior and made inappropriate remarks during testing.  (R. 318).  Dr. Valenstein could not rely on the accuracy of the testing because of Plaintiff's lack of attention to test items, but stated that he would have difficulty obtaining work if he acted as he did during her interview.  (R. 318).  She stated he did appear to have work related skills.  (R. 318).

**No. 1:03CV179-MMP/AK**

A Psychiatric Review form completed by a non-examining DDS physician finds Plaintiff to have dysthymic disorder, not severe, and polysubstance abuse. (R. 216-224).

A residual functional capacity evaluation by a non-treating source, but based on treating physician records finds Plaintiff capable of lifting up to 50 pounds occasionally; 25 pounds frequently; and sitting, standing and walking up to six hours in an eight hour day. (R. 277-284).

### F.     SUMMARY OF THE ADMINISTRATIVE HEARING HELD ON 1/17/2001

Plaintiff testified that he was born on June 30, 1964, and was 36 years old at the time of the hearing. (R. 44). He lives with his mother and 15 year old son from a previous marriage. (R. 45). He has a high school education by GED, is able to read and write and perform simple math, and last worked in 1999 as a machine operator. (R. 46).

Plaintiff injured his back in 1992 carrying an empty five gallon paint can and a full one, which he switched from arm to arm, and "that was all she wrote." (R. 50). He went to a chiropractor for five to eight months with no relief. (R. 50).

Plaintiff claims that he is unable to work because of his lower back pain. (R. 56). His treating physicians are Dr. Caranosos and Dr. Jones, who diagnosed a herniated disc ad L-5-S-1 and a bulge at L4-5. (R. 57). Plaintiff has had several MRI's. (R. 57). No one has discussed surgery with Plaintiff, but he takes several medications: Soma, Hydrocodone, and Ultram. (R. 58). Plaintiff claims to have pain on a scale of 18 to 20 (with 25 being the worst) 24 hours a day every day. (R. 59). He also has pain In his

neck and down his legs, which is also severe, every day, but not as bad as his lower back pain. (R. 60-61).

Plaintiff tried to kill himself because the pain is so bad, and that is how he ended up being treated for depression. (R. 61). He believes he probably has some mental problems because he used to be a hard working individual and now he can not do anything. (R. 62).

Plaintiff denies daily use of marijuana, but admits to using it the week before the hearing. (R. 62-64). He admits to having a severe problem with it at one time, but he "gave it up," except he smoked it the week before. (R. 65). When the ALJ pressed him when he was last smoking it every day, he says "I haven't smoked marijuana in quite a long time." (R. 66). He later admits that he smoked it every day up until six months prior to the hearing. (R. 66).

Plaintiff claims that he was in serious pain after sitting 20 to 30 minutes, that if he were to stand up he could only stand for ten minutes, and that he could not walk more than 100 ro 200 feet before he would need to sit down. (R. 68). Plaintiff claims that he can lift only three to five pounds because of severe pain in his shoulder. (R. 68). The ALJ had Plaintiff do some arm exercises, and he reported that it caused considerable pain in his shoulder to do them. (R. 68-69).

Plaintiff lives with his mother and receives welfare, food stamps, and AFDC for his son. (R. 69-70). He is currently seeing a psychiatrist so he can get his Zoloft prescription filled. (R. 71). He does no house work or yard work, does nothing for fun,

has had some vocational rehabilitation, but could not sit through the class because of his back pain. (R. 72).

Plaintiff's mother testified that no one had mentioned surgery for Plaintiff that she could recall. (R. 74). Someone suggested nerve tests, but they never called back, and Plaintiff did not follow up with it. (R. 75). The ALJ asked why, if Plaintiff had such unrelenting pain, he had not insisted on more being done to help him. Plaintiff says he's learned to live with it, but the ALJ said being unable to work is not living with it, and Plaintiff says he does not have the money the ALJ does, but then admits that he was currently on Medicaid. (R. 75-77). The ALJ then tells Plaintiff and his mother to use the Medicaid and get a referral to a specialist for nerve tests and another MRI, if necessary, and that he would put the decision on hold for 90 days. (R. 80-81). The ALJ also stated that he was going to order tests and a consultative examination. (R. 81).

The vocational expert testified that based on the ALJ's hypothetical of light work with ability to climb, balance, stoop, kneel, crouch, and crawl occasionally; no foot controls; no hazzards; frequent overhead reaching; and simple, routine, repetitive tasks, with low stress and only occasional contact with the public, Plaintiff would be unable to perform any of his past relevant work, but could perform a number of other jobs in the national economy. (R. 86). When this hypothetical was reduced to sedentary, the expert testified that there were no jobs that Plaintiff could perform. (R. 87).

## G. SUPPLEMENTAL HEARING HELD ON APRIL 2, 2002

**No. 1:03CV179-MMP/AK**

A different ALJ conducted the second hearing, and Plaintiff told him he had a new treating physician, Dr. De Paz, for his back, and a psychiatrist, Dr. Yoland Hernandez. (R. 92). There are also new records from Dr. Hudson, Plaintiff's social worker. (R. 93).

A vocational expert was called and the ALJ gave the following hypothetical to her: light exertional level, no climbing, no kneeling, no crawling, occasional balancing, stooping, and crouching; no heights or hazzards; no environmental issues; simple, routine tasks, moderate stress, with little independent judgment; and a sit/stand option. (R. 95). The expert found numerous jobs which plaintiff could perform. (R. 96). When asked to reduce the hypothetical to a sedentary exertional level, the expert also named several jobs, which Plaintiff could perform. (R.97).

## H.   DISCUSSION

Plaintiff claims that both notices regarding his hearing before the ALJ were defective in that they failed to advise him of his right to counsel or that he might be able to obtain free counsel or that any attorneys fees would be limited by law. Plaintiff also claims that failure to have representation resulted in prejudice to Plaintiff in that the ALJ failed to obtain his mental health records during the 18 month period between the initial hearing and the supplemental hearing.

Since a claimant in a social security case has the right to counsel, he must be advised of this right before a hearing. Cowart v. Schweiker, 662 F.2d 731 (11th Cir. 1981). If a claimant wishes to proceed without counsel, a waiver must be obtained.

**No. 1:03CV179-MMP/AK**

Cowart at 734.  Failure to obtain counsel does not constitute grounds for remand unless prejudice is shown, specifically in a failure to fully develop the record.  Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995).

The first Notice of Hearing dated December 16, 2000, advising Plaintiff of the January 17th hearing, does not advise him of his right to legal counsel.  (R. 114).  However, at the hearing the ALJ advised Plaintiff that he could get an attorney and that he would give Plaintiff a continuance on his hearing if he wished to wait and obtain counsel.  (R. 40).  The ALJ told him there were three ways to get a representative: "The first is you pay them cash.  The second way is you qualify for free legal services through Legal Aid.  The third way is you agree to pay a percentage of your back benefits.  Right now the current regulations state and most places take 25 percent of your back benefits up to a maximum of (inaudible) thousand dollars if you win, and you own nothing (inaudible) expenses, you lose."  (R. 41).  Plaintiff asked if he could reapply if he did not have representation and things did not go his way.  The ALJ said that he could re-apply as many times as he wanted.  (R. 41).  The ALJ even asked Plaintiff's mother, who was present, if she wanted to wait and obtain representation.  (R. 41-42).  Thus, even though the notice was deficient, the ALJ properly advised Plaintiff of his rights at the hearing, and this procedure is sufficient.  See Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982) (defective notice cured at hearing).

The second Notice of Hearing concerning the April 2nd hearing was dated March 13, 2002, and included a section "You May Choose to Have a Person Represent You, "

**No. 1:03CV179-MMP/AK**

which simply states that if he decides to have someone represent him he should do it right away and have them call the hearing office. (R. 117). A Waiver of Right to Legal Representation was signed by Plaintiff and dated April 2, 2002, the date of the supplemental hearing. (R. 120). Plaintiff's point is that the notice did not properly advise Plaintiff that he had a right to counsel, the waiver form did, but the waiver was not provided to Plaintiff until he was at the hearing. While the notice is clearly inadequate as to Plaintiff's rights with regard to counsel, this notice was sent to Plaintiff after he was fully apprised of his rights regarding counsel at the initial hearing by the ALJ.

Further, Plaintiff has shown no prejudice from a lack of counsel. The ALJ had a number of the records of Meridian Behavioral (R. 229-276) detailing Plaintiff's treatment by David Hudson. While a large number of records from Meridian were not submitted until the case was before the Appeals Council, many of these later records are duplicative of earlier submitted records or chronicle much of the same course of treatment for depression and anxiety, and include continued complaints of severe and unrelenting pain. (See R. 358-511). The ALJ did have benefit of the mental health reports from Dr. Mhatre, Dr. Hernandez, and Dr. Valenstein, which he addressed in his findings. While it is true that the transcript of Plaintiff's medical evidence submitted to the Court appears to be incomplete insofar as Dr. Mhatre's report (R. 212-215), the ALJ must have had the full report because he makes reference to the diagnosis, which was not included in the pages provided in the Court's copy of the transcript. (See R. 24).

**No. 1:03CV179-MMP/AK**

Consequently, Plaintiff has failed to show how representation would have resulted in a better development of the record. Other than the missing page or pages of Dr. Mhatre's report, the transcript is voluminous and contains all the medical records detailing Plaintiff's back condition and depression that Plaintiff indicated he has undergone.

Finally, while Plaintiff certainly appears motivated to work and provide for his family, the objective medical evidence simply does not support a physical condition that would result in the severe and debilitating pain he describes. None of the doctors who examined Plaintiff and viewed the MRI and x-ray evidence of his back have ever suggested anything more than anti-inflammatory medication and relatively low dose pain medication, *i.e.* conservative treatment. Although Dr. Caranasos suggested that Plaintiff seek help from the Spine Care Center, there is no evidence that he sought relief from that facility, and the evidence shows that Plaintiff receives Medicaid such that money is not an obstacle to seeking less conservative treatment if that would alleviate the cause of his suffering. The only two medical statements that support a finding of total disability are the form responses from Drs. De Paz and Hernandez to a state agency seeking confirmation of Plaintiff's ability to work. These statements appear perfunctory and conflict with the records and other reports, particularly of Dr. De Paz, who later specifically found Plaintiff capable of light work and suggested that he get a job. While there is no explanation for these conflicting statements, the ALJ has the discretion to resolve such conflicts in the record and to reject such conclusory statements when they are not based on objective medical findings. Nonetheless, this

**No. 1:03CV179-MMP/AK**

Court's review of the evidence is limited to whether or not the Commissioner's decision is supported by substantial evidence, and there is substantial evidence to support the ALJ's finding that Plaintiff could perform a reduced, light level of work.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this **27**<sup>th</sup> day of April, 2005.

> s/ A. KORNBLUM
> **ALLAN KORNBLUM**
> **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:03CV179-MMP/AK**